UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS W.,[1]

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

<u>DECISION & ORDER</u>

20-CV-1010MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Thomas W. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 13).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 12, 14).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and

plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

## I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also

Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is

defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   <u>The ALJ's Decision</u>

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity between the alleged onset date of January 1, 2013 and December 31, 2016, his date last insured. (Tr. 15-25).[2] In reaching this conclusion, the ALJ noted that he was unable to determine the amount plaintiff earned after the onset date because plaintiff's earnings were not recorded. (*Id.*). Although unable to determine plaintiff's earnings, the ALJ nevertheless declined to deny the claim solely at step one and proceeded through the sequential evaluation. (*Id.*). At step two, the ALJ concluded that plaintiff had the following severe impairments: depressive disorder, anxiety disorder, and personality disorder. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

---

[2] The administrative transcript (Docket # 10) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations. (*Id.*). Specifically, plaintiff was limited to work involving simple, routine tasks that can be learned after a short demonstration or within 30 days, no more than simple work-related decisions, no more than superficial interaction with the public and up to occasional interaction with co-workers, and no teamwork, such as on a production line. (*Id.*). At steps four and five, the ALJ found that plaintiff was unable to perform past relevant work as an attorney or teacher, but that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as laborer-storage, automotive detailer, and housekeeper cleaner. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III.  Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 12, 15). First, plaintiff maintains that the mental portion of the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for the stress limitations assessed by consultative examiner Janine Ippolito, Psy.D. (Docket ## 12-1 at 13-18; 15 at 1-3). Second, plaintiff argues that the ALJ's consideration of the medical opinion of his treating psychiatrist, Michael Hallett, MD, violated the treating physician rule. (Docket ## 12-1 at 18-27; 15 at 4-5).

### IV.  Analysis

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198

5

F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making

an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities,

symptomology, including pain and other limitations which could interfere with work activities

on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009)

(citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant

evidence, including medical opinions and facts, physical and mental abilities, non-severe

impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL

1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d

Cir. 2010) (summary order).

### A.  <u>The ALJ Properly Accounted for Assessed Stress Limitations</u>

Plaintiff contends that the ALJ improperly failed to account for the stress

limitations assessed by Ippolito in formulating the RFC, despite purporting to give Ippolito's

opinion "great weight."  (Docket ## 12-1 at 13-18; 15 at 1-3).  I disagree.

The record demonstrates that Ippolito conducted a psychiatric evaluation of

plaintiff on December 6, 2016.  (Tr. 629-33).  At the time, plaintiff was working part-time as an

attorney; his hours varied between five and twenty per week.  Plaintiff reported that he was able

to perform household chores, including cooking, cleaning, laundry, and grocery shopping.  (*Id.*).

Plaintiff was able to drive and maintain relationships with his family and friends, and spent his

days gambling at an off-track betting site, surfing the internet, working, watching television, and

reading the newspaper.  (*Id.*).

On mental status examination, plaintiff appeared well-groomed and casually

dressed, but exhibited fleeting eye contact, slouching posture, and lethargic motor behavior.

(*Id.*).  His speech was fluent and clear, and his thought process was coherent and goal directed.

(*Id.*).  Plaintiff's affect was anxious, depressed, and tearful, and his mood was dysthymic, although he was oriented and had intact attention, concentration, and memory skills.  (*Id.*).  He had average to above average cognitive functioning and good insight and fair judgment.  (*Id.*).

In her medical source statement, Ippolito found "no evidence of limitations" in plaintiff's ability to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain a regular schedule, learn new tasks, and relate adequately with others.  (*Id.*).  Ippolito opined that plaintiff was mildly limited in maintaining attention and concentration and making appropriate decisions.  (*Id.*).  She also opined that plaintiff had moderate to marked limitations in appropriately dealing with stress and that plaintiff's difficulties were caused by emotional distress and fatigue.  (*Id.*).

The ALJ accorded Ippolito's opinion "great weight," observing that it was based on an examination of plaintiff as well as Ippolito's program knowledge.  (Tr. 20-23).  He also found that it was consistent with the opinion of state agency medical consultant Dr. Butensky, who reviewed the record and opined that plaintiff was capable of performing simple and complex jobs tasks but had mild to moderate limitations in his ability to sustain attention and concentration, adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors.  (Tr. 23, 87).

Plaintiff argues that the ALJ erred by failing to account for the moderate to marked stress limitations opined by Ippolito.  "[W]hen determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work

7

setting.'" *Reyes v. Colvin*, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting Social Security

Ruling "SSR" 85-15, 1985 WL 56857, *4 (1985)). "[E]ven without explicitly referencing a stress

limitation, [however,] an RFC determination may adequately account for a claimant's

stress-related limitations." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y.

2019). "For example, an RFC limiting a plaintiff to occasional interaction with co-workers and

the public, and to the performance of simple, routine tasks, may account for the plaintiff's

stress-related limitations." *Id.* (collecting cases).

> Here, the mental portion of the ALJ's RFC determination adequately

accommodated plaintiff's stress-based limitations. In his RFC analysis, the ALJ referenced

Ippolito's opined stress limitations (*see* Tr. 22) and noted that plaintiff testified that he had

difficulty concentrating and focusing and that he suffered from irritability and lack of motivation.

(Tr. 20). In his decision, the ALJ limited plaintiff to jobs involving simple, routine tasks that can

be learned within thirty days and no more than simple workplace decisions. (*Id.*). He also

limited plaintiff's required interaction with others by precluding work involving teamwork and

limiting plaintiff to jobs that required only occasional interaction with coworkers and no more

than superficial interaction with the public. (*Id.*). These limitations are entirely consistent with

Ippolito's assessment as they adequately accommodate a moderate to marked limitation in

appropriately dealing with stress. *See Martin v. Saul*, 2020 WL 5096057, *5 (W.D.N.Y. 2020)

(ALJ accounted for marked limitations managing stress by limiting plaintiff to low stress work

involving simple decisions, no production rate pace, few workplace changes, and only occasional

contact with others); *Rice v. Comm'r of Soc. Sec.*, 2020 WL 4283894, *4 (W.D.N.Y. 2020) (ALJ

accounted for moderate-to-marked limitations appropriately dealing with stress by limiting

plaintiff to simple work in a low stress environment involving simple routine decisions,

occasional contact with others, and no production-rate pace); *Blocker v. Saul*, 2020 WL 1047737, *6 (W.D.N.Y. 2020) ("the ALJ accounted for [p]laintiff's stress limitations by incorporating into [p]laintiff's RFC limitations to 'simple routine tasks,' 'occasional interaction with coworkers and the general public,' and 'low stress work defined as work involving only occasional decision making'[;] . . . [s]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress"); *Swanson v. Comm'r of Soc. Sec.*, 2020 WL 362928, *4 (W.D.N.Y. 2020) ("the RFC limits [p]laintiff to work in a 'low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas and minimal changes in work routine and processes[;] . . . [t]his limitation adequately accounts for [consultant opinion] that [p]laintiff was markedly limited in dealing with stress"); *Uplinger v. Berryhill*, 2019 WL 4673437, *7 (W.D.N.Y. 2019) ("the ALJ appropriately incorporated marked limitations in dealing with stress . . . into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public").

Accordingly, I find that the ALJ satisfied his obligation to evaluate and accommodate plaintiff's stress-based limitations. *See*, *e.g.*, *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, *4 (N.D.N.Y. 2019) (ALJ's RFC determination accounted for plaintiff's moderate to marked limitations in dealing with stress where she could still "follow and understand simple instructions and directions, . . . maintain a regular schedule, and . . . had moderate limitations in her ability to relate to others"; "ALJ limited [p]laintiff to routine and repetitive tasks and stated

that [p]laintiff cannot do tasks requiring public contact or more than occasional interactions with coworkers[;] [c]ourts have routinely held that RFC determinations account for a claimant's stress without specifically referencing a stress limitation") (quotations omitted); *see also Williams v. Comm'r of Soc. Sec.*, 2018 WL 4443173, *6 (W.D.N.Y. 2018) ("[i]n his decision, the ALJ discussed [the consulting psychologist's] opinion at length and explicitly acknowledged that [the psychologist] had assessed that [plaintiff] suffered from significant limitations in her ability to cope with stress[;] . . . [t]he ALJ reasoned that [the psychologist], despite assessing that [plaintiff] had difficulty dealing with stress, concluded that she was generally capable of performing simple tasks independently, relating adequately with others, and maintaining attention, concentration and a regular schedule[;] [i]n formulating the RFC, the ALJ thus accounted for [the psychologist's] assessment by limiting [plaintiff] to simple work involving routine tasks"); *Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("[w]ith respect to [consultative examiner's] opinion that plaintiff is moderately limited with respect to stress, [the court] find[s] that the ALJ largely accounted for such limitation in her RFC finding[;] [t]he RFC limited plaintiff to simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate"); *Cosme v. Colvin*, 2016 WL 4154280, *12-13 (W.D.N.Y. 2016) (ALJ's RFC finding adequately accounted for plaintiff's stress-related limitations where ALJ limited plaintiff to "positions involving unskilled work that did not require any contact with coworkers or the public and only limited contact with supervisors") (footnote omitted); *Steffens v. Colvin*, 2015 WL 9217058, *4 (W.D.N.Y. 2015) ("the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress").  In sum, I find that the ALJ did not err with respect to plaintiff's stress-based limitations and that remand is not warranted on this basis.  *See Reyes v.*

*Colvin*, 2016 WL 56267 at *6 ("although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations, as well as his comprehensive consideration of the hearing testimony, objective medical evidence, and treating and consultative medical source opinions, represents the kind of thorough, individualized mental RFC evaluation contemplated by SSR 85-15 and the overall requirements of the Social Security regulations and rulings").

### B.    The ALJ Properly Weighed Dr. Hallett's Medical Opinion

I turn next to plaintiff's contention that the ALJ violated the treating physician rule in considering Hallett's medical opinion.  (Docket ## 12-1 at 18-27; 15 at 4-5).  Specifically, plaintiff maintains that the ALJ failed to explicitly consider the relevant factors in evaluating the opinion and failed to give "good reasons" for according the opinion less than controlling weight. (Docket # 12-1 at 18-24).  Further, plaintiff argues that the ALJ improperly credited the opinions of the state consultants over that of his treating psychiatrist.  (*Id.* at 24-27).  I do not find that remand is warranted on these bases.

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[3]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment

---

[3]   This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply.

is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly consider the "*Burgess* factors":

(1)   the frequency of examination and length, nature, and extent of the treatment relationship,

(2)   the amount of medical evidence supporting the opinion,

(3)   the consistency of the opinion with the record as a whole,

(4)   whether the opinion is from a specialist, and

(5)   whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . [s]econd, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'").  "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'"  *Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v.*

12

*Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter

considering the above factors, the ALJ must comprehensively set forth [his] reasons for the

weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons'

for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations

and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an

ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the

opinions and for explaining precisely how those reasons affected the weight given denotes a lack

of substantial evidence, even where the conclusion of the ALJ may be justified based on the

record") (alterations, citations and quotations omitted). "This requirement allows courts to

properly review ALJs' decisions and provides information to claimants regarding the disposition

of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*,

2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

On December 5, 2015, Hallett completed a "Mental Residual Functional Capacity

Questionnaire" relating to plaintiff.  (Tr. 635-40).  Hallett indicated that he had been treating

plaintiff since July 2001 and generally saw him once every month; he diagnosed plaintiff with

major depression, anxiety disorder, alcohol dependency in remission, and personality disorder

not otherwise specified.  (*Id.*).  According to Hallett, plaintiff had had a fair response to

medication but his prognosis was guarded.  (*Id.*).  Hallett opined that plaintiff was completely

unable to perform several categories of work-related functioning in a regular work setting,

including: remembering work-like procedures; understanding, remembering and carrying out

detailed instructions; maintaining attention for two hour segments; maintaining regular

attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary

routine without special supervision; working in coordination with or proximity to others without

being unduly distracted; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; traveling to unfamiliar places or using public transportation; dealing with normal work stress; and, setting realistic goals or making plans independently of others. (*Id.*).

Hallett also opined that plaintiff would only be able to perform several work-related functions for between twenty and eighty percent of the workday, including: understanding, remembering and carrying out very short and simple instructions; making simple work-related decisions; asking simple questions or requesting assistance; and, being aware of normal hazards and taking appropriate precautions. (*Id.*). According to Hallett, evidence of plaintiff's limitations was demonstrated by his inability to maintain a relationship after his failed marriage and his inability to manage his jobs as an attorney and a teacher. (*Id.*). Hallett opined that plaintiff would be off task more than thirty percent of the workday and would be absent from work more than four days per month. (*Id.*). He also indicated that plaintiff's symptoms would be exacerbated by working full-time. (*Id.*).

The ALJ accorded this opinion "very little weight," particularly Hallett's opinion that plaintiff was unable to work, reasoning that it was inconsistent with Hallett's treatment notes demonstrating that plaintiff worked as an attorney and teacher during the entire period that Hallett treated plaintiff. (Tr. 23). Plaintiff maintains that the ALJ erred in evaluating Hallett's opinion because he did not explicitly consider the relevant factors, failed to provide good reasons

for discounting Hallett's opinion, and improperly relied upon the opinions of the state consultants.

As an initial matter, it is far from clear that the ALJ erred by failing to "explicitly apply the *Burgess* factors when assigning weight" to Hallett's opinion. *Estrella*, 925 F.3d at 96 (quotations omitted). According to plaintiff, although the ALJ acknowledged that Hallett was a treating physician, he failed to explicitly consider the frequency of examination and length, nature, and extent of that relationship – the first of the *Burgess* factors. *See*, *e.g.*, *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order) ("merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment'"). Specifically, plaintiff maintains that the ALJ did not "discuss this, [although] Dr. Hallett had treat[ed] [p]laintiff monthly . . . since 2001." (Docket # 15 at 4). Plaintiff's contention is belied by the record. Indeed, the ALJ explicitly recognized that Hallett had been "treating the claimant monthly since July 2001." (Tr. 21).

Moreover, review of the decision as a whole reveals that the ALJ also considered several other *Burgess* factors, although much of the discussion was fairly cursory and not contained in the paragraph discussing the weight he accorded to Hallett. Specifically, he acknowledged that Hallett was a psychiatrist (factor four), but concluded that the disabling symptoms identified had "little support" in the medical record (factor two), and were inconsistent with the record as a whole (factor three), including Hallett's treatment notes demonstrating that plaintiff worked throughout the entire treating relationship and plaintiff's documented activities of daily living, which included working part-time as an attorney while caring for his aging mother and performing household chores. (Tr. 21-23).

In any event, failure to explicitly discuss the relevant factors does not necessarily require remand where "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed."  *Estrella*, 925 F.3d at 96 ("[b]ecause the ALJ procedurally erred, the question becomes whether a searching review of the record assures [the court] that the substance of the rule was not traversed – *i.e.*, whether the record otherwise provides good reasons for assigning little weight to [the treating physician's] opinion") (alterations and quotations omitted).  For the reasons explained below, I find that the substance of the treating physician rule was not traversed and that the ALJ otherwise provided good reasons for giving Hallett's opinion less than controlling weight.

Although the ALJ could have more fully explained his reasoning, a searching review of the record reveals adequate support for his determination that the significant limitations assessed by Hallett were inconsistent with Hallett's own treatment records, plaintiff's self-reports of his daily activities, and the record as a whole.  (Tr. 23-24).  The record demonstrates that plaintiff received ongoing, monthly treatment from Hallett for more than fifteen years.  (Tr. 303-624, 644-67).  Throughout the closed-period, plaintiff made significant and generally successful strides towards maintaining his sobriety, and his symptoms remained relatively stable and mild in severity.  (Tr. 317, 332, 340, 356, 364, 372, 380, 388, 396, 404, 412, 420, 428, 437, 446, 455, 464, 473, 482-83, 487, 494-95, 501-502, 508-509, 569, 580-81, 593, 605, 617, 649, 661).  In addition, during this period, plaintiff was able to engage in significant activities, including caring for his elderly mother, performing household chores, attending church weekly, and maintaining part-time employment as an attorney for his brother's law firm.  (*See*, *e.g.*, Tr. 230-38).

Although plaintiff appeared to suffer exacerbation of his symptoms in late 2015 and early 2016, Hallett attributed the exacerbation to situational stress and determined that medication adjustment was not warranted. (Tr. 514-21). It was during this period (November 2015) that Hallett first opined that plaintiff was totally and permanently incapable of working – an opinion he continued to hold at the time of hearing three years later despite his own treatment notes documenting that plaintiff was "getting a significant amount of work" from his brother, was considering becoming a public defender or working in Family Court to supplement his income, had visited his daughter in New York City for four days, and had taken both of his children on a trip to Northern California for ten days. (Tr. 515, 806-11). In any event, Hallett's treatment notes suggest that plaintiff's exacerbated symptoms diminished by April 2016 and remained mild throughout the rest of the closed period. (Tr. 565-623, 644-67).

In sum, a longitudinal review of plaintiff's medical record demonstrates that the significant limitations assessed by Hallett were not supported by the objective findings documented in the records or plaintiff's own statements regarding his abilities. On this record, I conclude that the ALJ did not violate the treating physician rule by according "very little" weight to Hallett's opinion for the reasons he explained. *See Harrington v. Colvin*, 2015 WL 790756, *16 (W.D.N.Y. 2015) (ALJ properly discounted treating physician opinion where it assessed limitations that were inconsistent with findings contained in the treatment records and with admissions claimant had made concerning his activities of daily living); *Wilferth v. Colvin*, 49 F. Supp. 3d 359, 362 (W.D.N.Y. 2014) (ALJ properly weighed treating physician opinion and "adequately explained her reasons for declining to grant controlling weight to his conclusion" where opinion was "inconsistent with other opinions in the record, as well as statements made by the plaintiff himself, and none of the objective test records . . . indicate[d] a level of disability

17

greater than that reflected in the plaintiff's RFC, as determined by the ALJ"); *Gladle v. Astrue*, 2008 WL 4411655, *5 (N.D.N.Y. 2008) (ALJ properly discounted opinion of treating physician where it was inconsistent with treatment records and objective findings of the consultative examiner).

   I also reject plaintiff's suggestion that the ALJ was not entitled to rely on consulting opinions in formulating the RFC.  (Docket # 12-1 at 24-27).  Although some courts have noted that under certain circumstances the opinion of a non-examining physician alone may be insufficient to support an RFC assessment, *see*, *e.g.*, *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, *6 (W.D.N.Y. 2018) ("[d]istrict [c]ourts in this Circuit have stated, as a general proposition, that while reports from nonexamining consultants are entitled to some evidentiary weight, they cannot constitute substantial evidence"), those circumstances are not present in this case.  Rather, the ALJ's decision makes clear that the RFC was based upon a review of the entire record, including both Butensky's and Ippolito's opinions and the medical records demonstrating relatively stable symptoms and plaintiff's significant activities throughout the closed period. (Tr. 19-24).  *See Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273 at *6 ("as explained above, the ALJ did not rely on [the non-examining physician's opinion] as sole support for her RFC determination[;] . . . [t]he ALJ also evaluated [the examining physician's opinion], and incorporated many of her findings into the RFC assessment, and she considered the medical evidence and [plaintiff's] testimony and credibility"); *see also Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016) (summary order) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[t]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record")); *Maleski v. Comm'r of Soc. Sec.*, 2020 WL 210064, *4 (W.D.N.Y. 2020) ("[i]t is well settled that an ALJ is entitled to rely

upon the opinions of both examining and non-examining State agency medical consultants, since

such consultants are deemed to be qualified experts in the field of social security disability[;] . . .

[t]he opinion of a non-examining source may override that of an examining source, even a

treating source, provided the opinion is supported by evidence in the record"); *Rose o/b/o*

*X.G.T.A. v. Berryhill*, 2019 WL 2453352, *3 (S.D.N.Y.) ("when supported by evidence in the

record, the opinion of a nonexamining physician can also constitute substantial evidence"),

*report and recommendation adopted by*, 2019 WL 2498279 (S.D.N.Y. 2019); *Cheatham v.*

*Comm'r of Soc. Sec.*, 2018 WL 5809937, *6 (W.D.N.Y. 2018) ("[n]on-examining medical

consultants . . . may provide opinions which constitute substantial evidence"); *Ortiz v. Comm'r*

*of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) ("[u]nder the regulations, the ALJ was

permitted to consider the opinion [of the non-examining physician] in making a disability

determination[;] . . . [m]oreover, the opinion of a non-examining medical expert . . . may be

considered substantial evidence if consistent with the record as a whole").

   I am satisfied that "a searching review of the record assures [the court] that the

substance of the treating physician rule was not traversed" in assigning "little weight" to

Hallett's opinion. *Estrella*, 925 F.3d at 96. Indeed, the record supports the ALJ's conclusion

that the restrictive limitations contained in that opinion – including some which would be work

preclusive – were not supported by the record evidence. Accordingly, I find that any error by the

ALJ in not more fully explaining his rationale was harmless and does not necessitate remand.

*See*, *e.g.*, *Bachety v. Comm'r of Soc. Sec.*, 2021 WL 371583, *4 (E.D.N.Y. 2021) ("[the court]

would have preferred, and the regulation requires, more elucidation from the ALJ on why she

discounted the entirety of [treating physician's] opinion[;] [h]owever, on this record, I am

confident that a remand would not result in a different conclusion on [RFC] or disability[;]

[a]lthough the ALJ failed to explicitly consider the factors underlying the treating physician rule, my review of the record assures me that there were good reasons for assigning little weight to [treating physician's] opinion, and thus the procedural error was harmless"); *Jedermann v. Comm'r of Soc. Sec.*, 2020 WL 5361665, *5 (W.D.N.Y. 2020) ("[i]n the present case, the ALJ committed procedural error when she did not explicitly apply the *Burgess* factors while assigning weight to [treating physician's] opinion[;] [h]owever, after an independent, 'searching review' of the record as a whole, including both the ALJ's decision, and [treating physician's] opinion, the [c]ourt finds that the substance of the treating physician rule was not traversed in this case[;] [t]he ALJ's otherwise thorough opinion allows this court to conclude that the ALJ's error was harmless, and her weigh[ing] of [treating physician's] opinion was based on substantial evidence"); *Fisher v. Comm'r of Soc. Sec.*, 2020 WL 5757188, *7-8 (W.D.N.Y. 2020) ("[b]ecause the ALJ did not explicitly acknowledge the 'treating physician rule' or explicitly utilize the *Burgess* factors to explain why [treating physician's] opinions were not entitled to controlling weight, the [c]ourt finds that the ALJ committed procedural error[;] [t]herefore, the [c]ourt has conducted 'a searching review of the record to assure [that [p]laintiff] received the rule's procedural advantages[]'[;] [t]his searching review has satisfied the [c]ourt that [treating physician's] opinions were not well-supported by clinical findings and w[ere] contradicted by substantial evidence in the record") (citations omitted).

## <u>CONCLUSION</u>

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED**.  Plaintiff's

motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and plaintiff's complaint

(Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


                                                              *s/Marian W. Payson*
                                                        MARIAN W. PAYSON
                                                   United States Magistrate Judge


Dated:  Rochester, New York
          August 10, 2021